1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

LYNDA MARIE OWENS,

11

Plaintiff,

CASE NO. 12cv5549-BHS-JRC

12

v.

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,[1]

14

Noting Date: April 26, 2013

15

Defendant.

16

17       This matter has been referred to United States Magistrate Judge J. Richard

18  Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19  4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261,

20  271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 11, 14, 15).

21

22  ───────────────

23       [1] Carolyn W. Colvin became the Acting Commissioner of the Social Security
    Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil
24  Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

After considering and reviewing the record, the Court concludes that the ALJ's written decision is supported by substantial evidence in the record as a whole and should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Social Security cases typically involve a claimant's medical records as a whole, and as a result, tend not to be simple matters. This matter herein is made more complicated by a diagnosis of a disorder that causes plaintiff involuntarily to experience exaggerated symptoms from those generally expected, given the objective medical evidence. The matter before the Court also is complicated by the ALJ's finding that plaintiff was not credible and a suggestion that plaintiff was malingering, which involves an intentional exaggeration of symptoms.

To the extent that the ALJ failed to credit fully plaintiff's allegations and testimony, such failure was supported by clear and convincing reasons supported by substantial evidence in the record as a whole. The ALJ's failure to credit fully an opinion from an examining doctor regarding plaintiff's attention and concentration abilities and limitations likewise was supported by clear and convincing reasons. Finally, the ALJ's ultimate determination that plaintiff is not disabled pursuant to the Social Security Act is supported by substantial evidence in the record as a whole.

## BACKGROUND

Plaintiff, LYNDA MARIE OWENS, was born in 1944 and was sixty-one years old on the alleged date of disability onset of June 2, 2006 (*see* Tr. 11, 310). She completed eighth grade and obtained her GED (*see* Tr. 313). Plaintiff's last job worked was at a pharmacy, delivering prescriptions and medical supplies (*see id.*). Plaintiff quit

1  this job, which was part time, due to the size of the boxes that she was expected to deliver

2  (*see* Tr. 314). She testified that she worked at this job two and a half to three years prior

3  to her March 14, 2012 administrative hearing (*see* Tr. 315).

4      Prior to plaintiff's pharmacy job, she worked as a custodian for the Tacoma

5  School District (*see id.*). Plaintiff was injured on the job, resulting in this job ending (*see*

6  *id.*). Plaintiff testified that after this job ended, she did not try to get another job for a few

7  years, although she had been released for light duty work (*see* Tr. 316-17). When asked

8  why she did not look for work, she indicated that she was not able to find anything (*see*

9  Tr. 317). Plaintiff clarified that she was looking for work, but did not find any jobs to

10  apply for (*see* Tr. 317). Plaintiff thereafter remembered one job that she had applied for,

11  but never received a call about (*see* Tr. 317-18).

12

13      Plaintiff also testified that prior to her job as a custodian with the Tacoma School

14  District, she worked for Xerox (*see* Tr. 321-23). When asked at her administrative

15  hearing why there was over a year gap in earnings between her job at Xerox and her

16  custodian job, plaintiff testified that she left Xerox because she really wanted to work

17  with the Tacoma School District (*see id.*). When asked by the ALJ why she left her job at

18  Xerox so long before her job began at Tacoma School District, plaintiff responded as

19  follows: "Well I had a job, I just, you know, I was trying to get the job, and I had

20  numerous interviews, and it was on hold, and then finally, they did take me on, and that

21  was why" (Tr. 323). Plaintiff indicated that she could have worked a job while trying to

22  get the job at Tacoma School District, but that she did not do so and she did not know

23  why she did not do so (*id.*). When asked at her March, 2012 hearing if she had been

24

looking for work recently, plaintiff indicated that she had not looked because she was not able to do anything for long periods of time and did not think that she could find any job that she could work (*see* Tr. 329-30).

Plaintiff testified that she had been suffering from disabling pain in her back and left leg since her on the job injury in 2006 (*see* Tr. 323-24, 326). She testified that she was prescribed muscle relaxers, Vicodin and anti-inflammatories when she first was injured and that they helped (Tr. 327). Plaintiff testified that she did not experience as much pain when she engaged in her normal activities if she was taking her pain pills; however all she currently was taking was Tylenol, which "takes the edge off" (Tr. 328). Plaintiff testified that the Tylenol does not allow her to do more activities, but she is not in as much pain when she takes it (*see* Tr. 328-29).

Plaintiff testified at her March, 2012 hearing that she had experienced stomach problems for at least eight years (*see* Tr. 330). When the ALJ asked plaintiff is she ever worked with these problems, plaintiff responded as follows: "Oh, I was able to work, just kind of manage it with diet, but - -" (Tr. 331). The ALJ asked plaintiff if at the time of the hearing she was experiencing stomach problems such that she could not work, and plaintiff replied: "No, I can manage it with diet - -" (*see id.*).

Plaintiff also testified in March, 2012 that she suffers from panic when she leaves the house and that this had been going on for about five years (*see* Tr. 331). She indicated that she had never gone to see a doctor because of the panic, despite her testimony that it had "gotten real bad" (*see id.*). Plaintiff testified that she was "just living with it," and further explained that she had not "found anybody that could help [her] with anything, to

tell you the truth" (*see id.*). Plaintiff testified that she had not felt the need to go to the doctor for any abdominal problems or any back or leg problems (*see* Tr. 333). Plaintiff also indicated that she could not have afforded to go to a doctor even if she had gone at that time (*id.*). However, plaintiff subsequently testified that she later applied for Multicare Financial Assistance in order to obtain medical care and many tests (*see* Tr. 336). Plaintiff indicated that it was possible that she could have utilized this assistance previously, had she needed medical care (*id.*).

Plaintiff receives social security retirement income and at the time of the administrative hearing, testified that she lives by herself (*see* Tr. 312). At the time of the ALJ's written decision, she had at least the severe impairments of lumbosacral strain/sprain with mild degenerative disc disease and somatoform disorder (*see* Tr. 290). In the federal regulations regarding Listed Impairments with respect to step three of the sequential disability evaluation process, somatoform disorders are described as "Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20. C.F.R. Part 404, subpart P, App. 1, § 12.07. The ALJ supported this finding of severity in part by noting that one of plaintiff's examining physicians "reported that the claimant had no physical abnormalities on examination but instead had 'virtually every non-organic finding positive with extreme pain magnification behavior and subjective complaints far in excess of objective findings' (internal citation to Exhibit 9F/7)" (*see* Tr. 290). The ALJ found that plaintiff's somatoform disorder impacted plaintiff's "ability to perform work-related activities by manifesting through limitations

1  in physical functioning, rather than mental functioning (internal citation to Exhibit

2  9F/7)," and was a severe impairment (*see id.*).

3  PROCEDURAL HISTORY

4      On October 20, 2006, plaintiff filed an application for a period of disability and

5  disability benefits ("DIB") pursuant to Title II of the Social Security Act alleging

6  disability since June 2, 2006 (*see* Tr. 118-20, 287). Plaintiff's applications were denied

7  initially and following reconsideration in 2007 (*see* Tr. 54-56, 58-62, 287). Plaintiff's

8  first requested hearing was held before Administrative Law Judge M.J. Adams ("ALJ

9  Adams") on August 31, 2009 (*see* Tr. 19-39). On September 30, 2009, ALJ Adams

10  issued a written decision in which he concluded that plaintiff was not disabled pursuant to

11  the Social Security Act (*see* Tr. 8-18). After the Appeals Council denied plaintiff's

12  request for review, this written decision by ALJ Adams was reversed by this Court on

13  March 11, 2011, based on a stipulated motion for remand by the parties (*see* Tr. 365-71).

14  The Appeals Council vacated ALJ Adams' written decision and remanded the case to

15  Administrative Law Judge Joanne E. Dantonio ("the ALJ") on May 27, 2011 (*see* Tr.

16  287, 372-76).

17      Plaintiff's additional administrative hearing was held on March 14, 2012 before

18  the ALJ (*see* Tr. 305-48). On April 18, 2012, the ALJ issued a written decision in which

19  she concluded that plaintiff was not disabled pursuant to the Social Security Act from

20  June 2, 2006, the alleged onset date, through plaintiff's date last insured of June 30, 2010

21  (*see* Tr. 284-304). No exceptions were filed and the Appeals Council did not otherwise

22

23

24

assume jurisdiction of the case, therefore the ALJ's April 18, 2012 written decision is the final administrative decision subject to judicial review. *See* 20 C.F.R. § 404.984(d).

Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision on June 22, 2012 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on August 29, 2012 (*see* ECF Nos. 8, 9). In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ erred at step two of the sequential disability evaluation process; (2) Whether or not the ALJ erred in assessing plaintiff's credibility; (3) Whether or not the ALJ erred in assessing plaintiff's residual functional capacity ("RFC"); and (4) Whether or not the ALJ erred in reviewing the opinion of examining doctor Dr. Kathleen Mayers, Ph.D. (*see* ECF No. 11, p. 1).

<u>STANDARD OF REVIEW</u>

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot,

considering the plaintiff's age, education, and work experience, engage in any other

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such "relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.

Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

389, 401 (1971). Regarding the question of whether or not substantial evidence supports

the findings by the ALJ, the Court should "review the administrative record as a whole,

weighing both the evidence that supports and that which detracts from the ALJ's

conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting

Andrews, supra*, 53 F.3d at 1039). In addition, the Court "must independently determine

whether the Commissioner's decision is (1) free of legal error and (2) is supported by

substantial evidence." *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing

Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v.

Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law

require us to review the ALJ's decision based on the reasoning and actual findings

offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

1. **Whether or not the ALJ erred at step two of the sequential disability evaluation process when considering plaintiff's severe impairments**.

Plaintiff contends that the ALJ erred in failing to find that her anxiety disorder was a severe impairment (*see* Opening Brief, ECF No. 11, pp. 3-4). Plaintiff supports her argument with a diagnosis of anxiety disorder, with panic-like episodes and GI-related

features (*see* Tr. 506). Plaintiff also offers as support the opinion from Dr. Kathleen S. Mayers, Ph.D., discussed further below, *see infra*, section 2.

Defendant points out that the ALJ relied on a finding that plaintiff had not complained of any limitations resulting from mental impairments prior to her date last insured for disability insurance benefits ("DIB") of June 30, 2011 (*see* Response, ECF No. 14, p. 17). Defendant also argues that the ALJ relied on the fact that plaintiff was able to work during the relevant time period, despite allegations of anxiety disorder with panic-like episodes and GI-related features (*id.*). Defendant also points out that the opinion from Dr. Mayers includes the indication that plaintiff had been able to manage her anxiety and nervous stomach issues (*id.* (*citing* Tr. 501)).

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen, supra*, 80 F.3d at 1290 (citations omitted).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;

capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen, supra*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); *see also Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009) (unpublished opinion). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Bowen, supra*, 482 U.S. at 146. Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a),

416.912(a); *Bowen, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "furnish[] such medical and other evidence of the existence thereof as the Secretary may require." *Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)); *see also McCullen v. Apfel*, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

Here, the ALJ included the following discussion regarding plaintiff's alleged severe anxiety disorder:

> The claimant's medically determinable anxiety disorder with panic-like episodes and gastrointestinal-related features and adjustment disorder with depressed mood, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic work activities and are therefore nonsevere (internal citation to exhibit 13F/6). The medical record before June 30, 2010, the date the claimant was last insured, shows that the claimant did not complain of limitations associated with mental symptoms, even while she alleged multiple physical symptoms (internal citations to exhibits 1F/10, 6, 2F/7, and 9F/3). Although the claimant had depressed mood, examinations generally indicated that she was alert, awake, and oriented (internal citation to Exhibit 1F/7). During the course of a psychological consultative examination performed on December 2011, occurring after the date last insured, the claimant was pleasant, cooperative, attentive, and responsive to questions (internal citation to Exhibit 13F/2). She spoke in a logical, organized, and goal directed manner (internal citation to Exhibit 13F/3). She was also fully oriented and had fair to above average memory, as well as good concentration (internal citation to Exhibit 13F/3, 4). The consultative examiner, Kathleen Mayers, Ph.D., gave the claimant a global assessment of functioning (GAF) score of 55, indicating moderate symptoms or moderate limitations in functioning (internal citation to Exhibit13F/6). Even if the mental and gastrointestinal symptoms were present before the date last insured, the record above shows that the claimant was able to work during the relevant time period (internal citation to Exhibit

1
2
3

> 10D; hearing testimony). In sum, the overall record, as discussed in
> detail below, indicates that the claimant's mental impairments of
> anxiety disorder with panic-like episodes and gastrointestinal-related
> features and adjustment disorder with depressed mood are nonsevere.

4

(Tr. 290-91).

5

6

The first reason relied on by the ALJ was that plaintiff had not complained of any

7

limitations prior to her date last insured, even though she had been alleging multiple

8

physical symptoms (*see* Tr. 290 (*citing* 1F/10, 6, 2F/7, and 9F/3)).

9

Plaintiff notes the comment from Dr. Mayers that plaintiff was "likely to be easily

10

stressed and to respond with medical symptoms" (Tr. 515). Plaintiff also points out that

11

Dr. Mayers' assessment was based in part on plaintiff's psychological test results

12

(MMPI-2), which was interpreted by Dr. Mayers as follows:

13

> Individuals who respond in this manner tend to report vague physical
> complaints, which usually increase under stress. It is typical for
> individuals like this to function at a decreased level of efficiency, and to
> prefer medical explanations for their symptoms rather than psychological
> explanations. Denial and rationalization are characteristic, along with
> limited insight. Such individuals view themselves as normal,
> responsible, and usually free of faults. Passivity and dependence are
> typical, and she is very likely to overreact to medical problems.

14

15

16

17

18

(Tr. 505-06).

19

The Court agrees with plaintiff that Dr. Mayers' assessment provides support for

20

the idea that plaintiff was suffering from mental impairments and resultant limitations,

21

but may not have complained about them as mental impairments, but instead complained

22

about them as physical complaints (*see id.*). Dr. Mayers specifically opined that

23

24

1    individuals such as plaintiff would "prefer medical explanations for their symptoms

2    rather than psychological explanations" (*id.*).

3        Based on the relevant record, although the Court finds that the ALJ did not err in

4    considering this factor, Dr. Mayers' assessment of the plaintiff's lack of recognition of

5    her mental health impairments and their functional effects, and plaintiff's potential

6    attribution of her mental symptoms and their resultant limitations to physical complaints,

7    diminishes the level to which plaintiff's lack of mental health complaints supports the

8    ALJ's decision to find these impairments nonsevere (*see id.*). Hypothetically, this would

9    be problematic for the step two determination in the ALJ's decision had this been the

10   only reason supplied by the ALJ for her failure to find that plaintiff's anxiety disorder

11   with panic-like episodes and gastrointestinal-related features was a severe impairment.

12

13       The ALJ also relied on her discussion of the objective medical evidence, such as

14   plaintiff's fair to above average memory, as well as good concentration, as assessed by

15   Dr. Mayers, and Dr. Mayers' assignment of a GAF of 55 (Tr. 290 (*citing* Exhibit 13F/3,

16   4, 6, *i.e.*, Tr. 503, 504, 506)).

17       In addition, the ALJ found that even if plaintiff was suffering from some level of

18   mental and gastrointestinal symptoms before the date last insured, the record

19   demonstrated that plaintiff was capable of working during the relevant time period (*see*

20   Tr. 290-91 (*citing* Exhibit 10D (*see* Tr. 302, 476-78); hearing testimony)). In support of

21   this finding, the ALJ cited plaintiff's Certified Earnings Records and her hearing

22   testimony (*see* Tr. 290-91 (*citing* Exhibit 10D (*see* Tr. 302, 476-78)). As discussed in the

23   background section herein, plaintiff's alleged date of disability onset is June 2, 2006 and

24

she testified to working part time for a pharmacy two and a half to three years prior to her

March, 2012 hearing (*see* Tr. 11, 310). Although the ALJ found that plaintiff's work at

the pharmacy "did not rise to the level of substantial gainful activity" (*see* Tr. 289), the

ALJ additionally cited plaintiff's March, 2012 hearing testimony in which plaintiff

testified that she had experienced stomach problems for at least eight years (*see* Tr. 330).

As discussed previously, *see supra*, BACKGROUND section, when the ALJ asked

plaintiff is she ever worked with these problems, plaintiff responded that she was able to

manage her gastro-intestinal problems with diet (*see* Tr. 331). The ALJ asked plaintiff

specifically if she was experiencing stomach problems in March, 2012 such that she

could not work, and plaintiff replied: "No, I can manage it with diet - -" (*see id.*).

Based on the relevant record, the Court concludes that the ALJ's implication that

plaintiff's mental impairments that were manifesting via physical symptoms that were

controlled adequately with diet were not severe impairments having more than a minimal

effect on plaintiff's ability to work is supported by substantial evidence in the record as a

whole (*see* Tr. 290-91; *see also* Tr. 294).

The Court also notes that Dr. Mayers indicated that plaintiff had "always had to

deal with diarrhea and a nervous stomach, but she has managed this and the anxiety that

this has caused through much of her life" (*see* Tr. 501). Although Dr. Mayers also

indicated that plaintiff had described this problem as "having recently worsened," Dr.

Mayers' report occurred on December 12, 2011, and plaintiff's date last insured is June

30, 2010 (*see* Tr. 289, 501, 507). Therefore, any limitations developed since December,

2011 are not likely to be relevant to the time period during which plaintiff last met the

insured status requirements of the Social Security Act relevant to plaintiff's claim for disability insurance benefits ("DIB") (*see* Tr. 289).

Based on the relevant record, the Court concludes that the ALJ's finding that even if plaintiff's anxiety and mental impairments and "gastrointestinal symptoms were present before the date last insured, the record shows that the claimant was able to work during the relevant time period;" her finding that plaintiff could manage her anxiety disorder with panic-like episodes and gastrointestinal-related features; and that plaintiff's "mental impairments of anxiety disorder with panic-like episodes and gastrointestinal-related features and adjustment disorder with depressed mood [we]re nonsevere" are all findings supported by substantial evidence in the record as a whole (*see* Tr. 290-91). *See Magallanes*, *supra,* 881 F.2d at 750 (*quoting Davis*, *supra*, 868 F.2d at 325-26).

For the reasons stated and based on the relevant record, the Court concludes that the ALJ did not commit error in her assessment at step two of the sequential disability evaluation process of plaintiff's severe impairments.

In addition, the Court concludes that even if the ALJ erred in assessing the severity of this impairment, any error is harmless, as plaintiff's testimony at her hearing and her representations to her examining doctor indicate that she was able to manage the limitations resulting from this impairment and that it did not keep her from working.

2. **Whether or not the ALJ erred in reviewing the opinion of examining doctor Dr. Kathleen Mayers, Ph.D**.

1       The ALJ is responsible for determining credibility and resolving ambiguities and

2   conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998);

3   *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).    If the medical evidence in the

4   record is not conclusive, sole responsibility for resolving conflicting testimony and

5   questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

6   Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing*

7   *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)).  It is not the job of the court to

8   reweigh the evidence: If the evidence "is susceptible to more than one rational

9   interpretation," including one that supports the decision of the Commissioner, the

10  Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954

11  (9th Cir. 2002) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599, 601

12  (9th Cir. 1999)). Determining whether or not inconsistencies in the medical evidence "are

13  material (or are in fact inconsistencies at all) and whether certain factors are relevant to

14  discount" the opinions of medical experts "falls within this responsibility." *Morgan,*

15  *supra,* 169 F.3d at 603. The ALJ also may draw inferences "logically flowing from the

16  evidence." *Sample, supra,* 694 F.2d at 642 (citations omitted).

17      The ALJ must provide "clear and convincing" reasons for rejecting the

18  uncontradicted opinion of either a treating or examining physician or psychologist.

19  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

20  1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

21  a treating or examining physician's opinion is contradicted, that opinion can be rejected

22  only "for specific and legitimate reasons that are supported by substantial evidence in the

record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).  The ALJ must only explain why "significant probative evidence has been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

Dr. Kathleen S. Mayers, Ph.D. examined and evaluated plaintiff on December 12, 2011 (*see* Tr. 501-07). She noted plaintiff's background information, past medical history and that plaintiff was not taking any prescription medication (*see* Tr. 501). Dr. Mayers performed a mental status examination ("MSE") and psychological tests, such as the Minnesota Multiphasic Inventory-2d edition ("MMPI-2") (*see* Tr. 502-506). Dr. Mayers noted that plaintiff indicated that she had never been fired, which is consistent with her March, 2012 hearing testimony regarding voluntarily leaving numerous jobs, *see supra,* BACKGROUND (*see also* Tr. 314, 320-22).

Dr. Mayers observed that plaintiff "did not respond much to back pain issues and she basically completed the entire lengthy exam at one lengthy sitting of over three hours" (*see* Tr. 502). Dr. Mayers also assessed that plaintiff was "somewhat inconsistent

in talking about her depressed mood and may have changed her mind, initially describing her mood as average and later describing herself as quite depressed" (Tr. 503).

Dr. Mayers assessed that plaintiff was logical in her speech and that her memory "ranged from fair to above average for these tasks" (*id.*). Dr. Mayers observed that plaintiff performed serial seven tasks without errors and performed other tasks designed to test concentration, such as performing "all three stages of two, different three-stage directions" (*see* Tr. 504). Dr. Mayers assessed that plaintiff's "concentration was good for these tasks" (*see id.*). Dr. Mayers also assessed that plaintiff's abstract thinking was good, and that her "judgment was variable, ranging from poor to fairly good" (*id.*).

Dr. Mayers assessed that plaintiff's concentration, persistence and pace were average and that her "anxiety is very much related to her GI difficulties" (*see* Tr. 505). Dr. Mayers diagnosed plaintiff with anxiety disorder, with panic-like episodes and GI-related features; adjustment disorder with depressed mood, among other diagnoses, and assessed plaintiff's global assessment of functioning ("GAF") at 55 (*see* Tr. 506).

In her medical source statement, Dr. Mayers included the opinion that plaintiff "probably could not maintain attention and concentration through a normal eight-hour workday because of her distressing panic-like GI episodes" (*see id.*). Plaintiff complains about the ALJ's failure to credit fully this opinion of Dr. Mayers regarding her "panic-like GI episodes" (*see* Opening Brief, ECF No. 11, pp. 6-7).

The ALJ fully credited some of Dr. Mayers' opinions (*see* Tr. 290-92, 297). The ALJ, however, included the following in her written decision:

1

2

3       As to opinion evidence, the psychological consultative examiner, Dr.
        Mayers, gave the claimant a GAF score of 55 and opined that the
4       claimant, despite being able to perform three-stage instructions, was
        unable to maintain attention and concentrate through a normal eight-hour
        workday because of distressing gastrointestinal episodes (internal
        citation to Exhibit 13F/6). Dr. Mayers also opined that the claimant had
5       only mild limitations in her ability to perform complex instructions and
        moderate limitations in her ability to interact with the public,
6       supervisors, and coworkers, and respond to changes in a routine work
        setting (internal citation to Exhibit 15F/1-2). After careful consideration,
7       the undersigned accords the opinion little weight because it is
        inconsistent with the objective medical record prior to the December 30,
8       2010, the date last insured. For example, despite a diagnosis of anxiety
        disorder with panic-like episodes, the record prior to the date last insured
9       does not reveal complaints of panic or anxiety. Moreover, the record
        shows that although the claimant reported gastrointestinal issues prior to
10      the date last insured, she was able to work without complaint during the
        periods when the symptoms were reported. In fact, the claimant testified
11      at the hearing that she manages the symptoms through diet and can
        essentially deal with them. Accordingly, because Dr. Mayers based her
12      opinion of limitations on reports of "distressing gastrointestinal
        episodes," the undersigned accords the opinion little weight.

13
   (Tr. 292).
14

15          The Court already has discussed much of this reasoning in the context of

16   upholding the ALJ's determination that plaintiff's anxiety disorder with panic-like

17   episodes and gastrointestinal-related features and adjustment disorder with depressed

18   mood were not severe impairments, *see supra*, section 1. For example, the Court assessed

19   that the ALJ's reliance on plaintiff's lack of complaints regarding panic or anxiety

20   provided only a limited amount of support for the ALJ's reasoning, as Dr. Mayers had

21   opined specifically that plaintiff fit the personality type of individuals who "prefer

22   medical explanations for their symptoms rather than psychological explanations" (Tr.

23   505-06). Although Dr. Mayers' opinion lends support to the interpretation of the record

24

that plaintiff was experiencing panic and anxiety, but reporting it as physical complaints, the record also supports the ALJ's logical inference that because plaintiff was not complaining about anxiety and depression that she was not suffering from anxiety and depression. *See Magallanes*, *supra,* 881 F.2d at 750 (*quoting Davis*, *supra*, 868 F.2d at 325-26) ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

Generally, if the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *See Thomas*, *supra*, 278 F.3d at 954 (*citing Morgan*, *supra*, 169 F.3d at 599, 601). However, in the context of the case and medical record before the Court, applying this principal is complicated by plaintiff's diagnosis of somatoform disorder. As noted previously, somatoform disorders are described in the federal regulations as "Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20. C.F.R. Part 404, subpart P, App. 1, § 12.07. The ALJ found that plaintiff's somatoform disorder was a severe impairment, thus recognizing that plaintiff may experience physical symptoms, such as GI symptoms, for which there are no demonstrable organic findings, that is, no objective evidence in support (*see* Tr. 290). When combined with Dr. Mayers' assessment that plaintiff may have been experiencing her anxiety involuntarily as GI symptoms, this diagnosis of somatoform disorder makes it difficult to credit the finding that plaintiff was not suffering from anxiety because she was complaining only of physical GI symptoms. In

1   essence, her complaints of physical symptoms in this instance support the diagnosis of

2   her mental impairment of anxiety.

3       However, plaintiff's testimony and the exact medical record questioned herein

4   both demonstrate that plaintiff's anxiety and panic, when they were experienced by her as

5   GI symptoms, nevertheless, still were not reflective of an impairment that caused more

6   than a minimal effect on her ability to work. As discussed previously by the Court, *see*

7   *supra*, section 1, plaintiff testified that that she was able to manage her gastro-intestinal

8   problems with diet and that they did not prevent her from working (*see* Tr. 331).

9

10      The Court also notes that Dr. Mayers indicated that plaintiff had "always had to

11  deal with diarrhea and a nervous stomach, but she has managed this and the anxiety that

12  this has caused through much of her life" (*see* Tr. 501). Therefore, even Dr. Mayers'

13  treatment record demonstrates that plaintiff has managed her diarrhea and nervous

14  stomach, "and the anxiety that this has caused her through much of her life" with diet

15  (*id.*).

16      The ALJ also indicated that she was assigning only "little weight" to the opinion

17  of Dr. Mayers because of the finding that "Dr. Mayers based her opinion of limitations on

18  reports of 'distressing gastrointestinal episodes'" (*see* Tr. 292). Regarding this reason

19  supplied by the ALJ, the Court notes that Dr. Mayers' opinion includes the following:

20
21          [Plaintiff] is experiencing anxiety and panic-like attacks. Her last panic
            episode was the day before the exam, and she reported that she has them
22          whenever she leaves the home. She has diarrhea, abdominal cramps, her
            heart races, she experiences shortness of breath, and she has passed out a
23          couple of times; she stated, 'I stress and go crazy.' . . . . These
            episodes began several years ago, and she reported that they are now
24          getting worse. She does not eat before she goes anywhere, and then she

1
2

has no diarrhea. She still experiences her heart racing and shortness of breath, even without the diarrhea. She does not feels like (sic) she will die, but sometimes gets light-headed. She reported no features of PTSD.

3

(Tr. 503).

4

The quoted reference by Dr. Mayers indicating plaintiff's description of her

5

gastrointestinal episodes demonstrates that Dr. Mayers was relying heavily on plaintiff's

6

subjective reports when making the findings regarding her anxiety and gastrointestinal

7

symptoms (*see id.*).

8

9

In addition, the Court notes that Dr. Mayers' objective testing regarding

10

concentration, including plaintiff's lack of errors on serial 7's and correctly performing

11

all three stages of two different three-stage directions, led Dr. Mayers to opine

12

specifically that plaintiff's "concentration was good for these tasks" (*see* Tr. 504). The

13

Court notes that the ALJ indicated elsewhere in her written decision that plaintiff "was

14

able to complete the psychological examination in one lengthy sitting over three hours"

15

(*see* Tr. 291 (*citing* Tr. 502)).

16

Based on the relevant record, the Court concludes that it is clear from Dr. Mayers'

17

treatment record that Dr. Mayers' opinion that plaintiff "could not maintain attention and

18

concentration through a normal eight-hour workday because of her distressing panic-like

19

GI episodes" was based largely on plaintiff's reports of distressing gastrointestinal

20

episodes, and, therefore, this finding is based on substantial evidence in the record as a

21

whole. Dr. Mayers' assessment of plaintiff's objective test results, even as summarized in

22

her concluding medical source statement, indicated that plaintiff's "fund of information,

23

concentration, and abstract thinking were good" (*see* Tr. 506).

24

Finally, the ALJ additionally supported her failure to credit fully Dr. Mayers' opinions with the finding that Dr. Mayers' "evaluation was performed more than five years from the alleged onset date and over one year from the date last insured" (*see* Tr. 297). Plaintiff's argument that the ALJ's finding is not supported by substantial evidence in the record because another doctor diagnosed somatoform disorder during the relevant period of time is unpersuasive and appears to miss the point. The ALJ appears to have found that Dr. Mayers' opinion is less persuasive regarding the relevant period of time because it was not offered during the relevant period of time. The Court also notes that Dr. Mayers' opinion is offered in the present tense, except when she refers to specific tests that plaintiff received at her office (*see* Tr. 506). Dr. Mayers does not appear to offer in her assessment an opinion regarding how plaintiff was limited during the past, but offers her assessment of plaintiff's contemporaneous functional ability (*see id.*).

For all of the reasons discussed, and based on the relevant record, including the ALJ's decision, plaintiff's testimony, Dr. Mayers' opinions and the other opinions of record, the Court concludes that the ALJ provided not only specific and legitimate, but also clear and convincing reasons for her failure to credit fully Dr. Mayers' opinions regarding plaintiff's limitations on her ability to work a normal eight-hour workday. *See Lester*, *supra*, 81 F.3d at 830 (*citing Baxter*, *supra,* 923 F.2d at 1396).

3. **Whether or not the ALJ erred in assessing plaintiff's credibility**.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v.*

*Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999); *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

treatment." *Smolen, supra*, 80 F.3d at 1284; *see also Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999) (reliance on inconsistent statements concerning drug use proper).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, *supra*, 80 F.3d at 1281 (*citing Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

A finding of malingering requires a careful analysis in the most straight-forward of cases. When a diagnosis of somatoform disorder is established in the record, a finding of malingering is further complicated by this fact. As indicated previously, somatoform disorders are described in the federal regulations as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20. C.F.R.

Part 404, subpart P, App. 1, § 12.07. Malingering is the intentional production of false or greatly exaggerated symptoms motivated by external incentives. *See* Somatoform Disorders, American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders IV-TR, #V65.2 (4th ed. 2000) (*see also* Tr. 290, n.1).

It is clear that evidence normally relied on to support a finding of malingering, such as the Waddell's findings in the record herein, also may be manifestations of a patient's somatoform disorder, as they typically identify physical symptoms that are not supported by any objective medical findings or any known physiological mechanism. A claimant with somatoform disorder may nevertheless also be a malingerer. Also, a claimant with somatoform may not be a credible witness because of the nature of the condition. This Court must determine based on the relevant record in this matter, if there are clear and convincing reasons to support the ALJ's finding that plaintiff's testimony was not fully credible.

As discussed further below, the Court concludes that the ALJ provided clear and convincing reasons to support her findings regarding plaintiff's credibility.

First, regarding plaintiff's allegations of disabling physical limitations regarding her back and left leg, the ALJ noted that one of plaintiff's treating physicians, Dr. Michelle Zhong, M.D. "found 'no true objective findings on exam' and reported that the claimant's subjective complaints 'are far in excess of objective findings' (internal citation to Exhibit 11F/1)" (*see* Tr. 294). The ALJ also noted in this context plaintiff's testimony regarding her ability to cope with her gastrointestinal symptoms with diet (*id.*).

The ALJ found that despite a lack of objective medical evidence to support a physical impairment resulting in limitations, plaintiff's somatoform disorder contributed to physical symptoms because it affected her perception of her physical abilities (*see id.*).

The ALJ, however, also found inconsistent and exaggeration of symptoms, and provided an example, where plaintiff demonstrated "normal sensation to light tough testing in all dermatomes of both lower extremities, despite complaints of severe pain with feather light touch over the lateral aspect of the left leg in a non-dermatomal pattern (internal citation to Exhibit 9F/6)" (*see* Tr. 295). The ALJ also noted that "[a]lthough the claimant showed positive straight leg raises on initial testing, she was able to perform a different form of straight leg raise when she was distracted and unaware of the type of testing she was given (internal citation to Exhibit 9F/8, 7)" (*id.*). The ALJ also discussed plaintiff's demonstrated 0/5 strength in her left leg muscle groups, and quoted the examining doctor's opinion that such findings, "if valid, would make it 'virtually impossible for [the claimant] to walk or bear weight of any kind' (internal citation to Exhibit 9F/6)" (*id.* (*citing* Tr. 274)).

The clear implication logically deduced by the ALJ was that although plaintiff's somatoform disorder may cause her to experience more pain than her actual physical impairments cause, this disorder diagnosis does not explain why she would selectively exhibit the effects of somatoform disorder only while being examined by the doctor, and not when attempting to walk or engage in activities in her everyday life. The ALJ's finding of symptoms exaggeration includes an acknowledgement of plaintiff's diagnosis of somatoform disorder, but also encompasses a recognition that if plaintiff's somatoform

disorder truly caused her to experience such pain, according to the doctor's opinion, it would have been "virtually impossible" for her to walk or bear weight of any kind (*see* Tr. 274). The fact that plaintiff reported to Dr. Mayer that she was "able to cook and clean . . . . can buy groceries and drive . . . . cleans about 30 minutes a day on the average [and] is able to wash dishes, do the laundry, and vacuum her floors," suggests that plaintiff was demonstrating more pain at the doctor's office from her somatoform disorder than she experienced in her everyday life from her somatoform disorder (*see* Tr. 504). Therefore, the ALJ's determination not to credit fully plaintiff's allegations of the extent to which she is limited in her ability to function in a normal work setting is supported by this evidence of symptoms exaggeration.

The ALJ also relied on inconsistencies in the medial record in support of her failure to credit fully plaintiff's credibility (*see* Tr. 296). The ALJ quoted the assessment from Dr. Mayers that plaintiff "was somewhat inconsistent in talking about her depressed mood and may have changed her mind, initially describing her mood as average and later describing herself as quite depressed" (*see id.* (*quoting* Tr. 503)). The ALJ similarly noted that plaintiff's presentation of her symptoms was vague and that despite alleging difficulties sitting, plaintiff "sat through a three hour-long psychological evaluation with Dr. Mayers without responding much to back pain issues (internal citation to Exhibit 13F/2)" (*id.* (*citing* Tr. 502)).

The Court notes that Dr. Mayers indicated specifically that plaintiff "did not respond much to back pain issues and she basically completed the entire lengthy exam at one lengthy sitting of over three hours" (*see* Tr. 502). Regardless of whether plaintiff's

back pain results from lumbosacral strain/sprain with mild degenerative disc disease or is enhanced pain experienced as a result of her somatoform disorder, the Court concludes that the ALJ's finding that the mentioned "inconsistencies weaken the credibility of the claimant's allegations of more limiting symptoms" is supported by substantial evidence in the record as a whole. *See Magallanes*, *supra,* 881 F.2d at 750 (*quoting Davis*, *supra*, 868 F.2d at 325-26) ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

The ALJ also indicated reliance on the fact that plaintiff had not sought medical treatment between 2006 and 2011 as follows:

> At the hearing, the claimant testified that she did not seek medical care between 2006 and 2011, despite her allegations of continuing back pain and other allegedly debilitating symptoms. While financial constraints may have been a factor in the lack of treatment, such an explanation is unlikely considering that the claimant did not seek treatment for her back or abdominal symptoms even after she became eligible for Medicare (Per hearing testimony). Such inconsistencies between the level and frequency of treatment and the degree of complaint suggest that the symptoms are not as severe as alleged.

(Tr. 296).

First, the Court notes that an ALJ must consider reasons in the record that might explain a claimant's failure to seek medical treatment before relying on this factor when assessing credibility. *See* SSR 96-7, 1996 SSR LEXIS 4, at *21-*22 ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that

may explain infrequent or irregular medical visits or failure to seek medical treatment"); *see also Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it") (citations, ellipses and brackets omitted).

The ALJ discussed plaintiff's potential inability to afford treatment as an insufficient explanation due to her failure to seek treatment after she became eligible for Medicare (*see* Tr. 296 (*citing* hearing testimony)). The ALJ indicated reliance on plaintiff's testimony, which includes plaintiff's admission that she could have utilized Multicare Financial Assistance, which she utilized to obtain tests, had she needed medical care (*see* Tr. 336).

In addition, the Court notes that in some instances, relying on a failure to seek medical treatment can be illogical, such as when a claimant has a mental impairment that includes a lack of insight into the mental impairment such that the individual doesn't recognize the need for treatment. The Ninth Circuit has recognized that a person suffering from a mental illness may not realize that she needs her medication, or she may not even realize that her "condition reflects a potentially serious mental illness." *See Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* (*quoting* with approval, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

1    However, in this circumstance, the totality of the record suggests that plaintiff's

2  impairments would tend to increase the frequency of times that she would seek treatment.

3  Plaintiff's severe somatoform disorder diagnosis would tend to result in plaintiff

4  subjectively experiencing pain greater than that substantiated by the objective medical

5  test results, and Dr. Mayers' assessment that plaintiff is of the personality type to

6  subjectively experience mental impairments and limitations as physical complaints

7  likewise would appear to increase the likelihood that plaintiff would seek medical

8  treatment, regardless of insight into the impairment (*see* Tr. 505-06). *See* 20 C.F.R. Part

9  404, subpart P, App. 1, § 12.07. In fact, Dr. Mayers indicated, specifically based on

10  plaintiff's results on psychological testing (MMPI-2), that plaintiff was "very likely to

11  overreact to medical problems" (*see* Tr. 506). Therefore, this condition would make it

12  more likely that she would seek medical treatment, not less likely. The fact that she did

13  not seek treatment, despite her ability to do so, supports the ALJ's conclusions regarding

14  plaintiff's lack of credibility.

15

16    Based on a review of the relevant record, the Court concludes that the ALJ

17  adequately considered potential reasons for plaintiff's failure to seek medical treatment

18  before relying on this factor when determining plaintiff's credibility. *See* SSR 96-7, 1996

19  SSR LEXIS 4, at *21-*22; *see also Regennitter*, *supra*, 166 F.3d at 1296.

20

21    Finally, the ALJ relied on a finding that plaintiff had little motivation to work (*see*

22  Tr. 296). In doing so, the ALJ relied on plaintiff's testimony at her administrative

23  hearing, discussed in part already by the Court above, *see supra*, BACKGROUND (*see*

24  Tr. 296). The ALJ noted how plaintiff initially testified that she did not look for any work

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 32

1   for a few years after she was released for light duty (*see* Tr. 316-17), but then

2   remembered one job that she had applied for but did not obtain (*see* Tr. 317-18). The

3   Court also notes that plaintiff testified that she left her previous job at Xerox voluntarily

4   before she obtained a job at Tacoma School District (*see* Tr. 321-23). The Court also

5   notes that Dr. Mayers indicated that plaintiff had "never been fired" (*see* Tr. 502).

6         Based on the relevant record, the Court concludes that the ALJ's finding that "the

7   evidence suggest that the claimant had little motivation to return to work and does not

8   enhance the credibility of the claimant's allegation that she is unable to work due to her

9   symptoms" is supported by substantial evidence in the record as a whole. *See*

10  *Magallanes*, *supra,* 881 F.2d at 750 (*quoting Davis*, *supra*, 868 F.2d at 325-26)

11  ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such

12  "relevant evidence as a reasonable mind might accept as adequate to support a

13  conclusion").

14

15        For the reasons stated and based on the relevant record, the Court concludes that

16  the ALJ provided clear and convincing reasons for her failure to credit fully plaintiff's

17  allegations and credibility. *See Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157

18  F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v.

19  Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

20        Although the Court has found that the ALJ provided clear and convincing reasons

21  for her failure to credit fully testimony and allegations from plaintiff, not every statement

22  by the ALJ in the context of plaintiff's credibility necessarily was supported by

23  substantial evidence in the record as a whole. However, as the ALJ did provide proper

24

and adequate reasons for this finding, and based on the relevant record, the Court concludes that any errors committed by the ALJ were harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts should review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

For the reasons stated and based on the relevant record, the Court concludes that the ALJ did not commit harmful legal error in the evaluation of plaintiff's credibility and testimony.

4. **Whether or not the ALJ erred in assessing plaintiff's residual functional capacity ("RFC").**

If the ALJ cannot determine whether or not a claimant is disabled based on a claimant's current work activity or on medical factors alone and a claimant has a severe impairment, the ALJ must review claimant's residual functional capacity ("RFC"). *See* Social Security Ruling "SSR" 96-8p, 1996 SSR LEXIS 5 at *3-*4. A determination regarding "residual functional capacity 'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" *Brown v. Astrue*, 405 Fed. Appx. 230, 233, 2010 U.S. App. LEXIS 26760 at **6 (9th Cir. 2010) (per curiam) (unpublished opinion) (*quoting id.* at *5) (*citing* 20 C.F.R. § 416.945; *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998)); *see also* SSR 96-8p, 1996 SSR LEXIS 5 at *5. Residual functional capacity is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c).

In evaluating whether or not a claimant satisfies the disability criteria, the Commissioner evaluates the claimant's "ability to work on a sustained basis." *See* 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b); *see also* 20 C.F.R. § 404.1545(c) (mental abilities).

Plaintiff's complaints regarding the ALJ's RFC largely revolve around issues already discussed above, such as the ALJ's rejection of Dr. Mayers' opinion that plaintiff was unable to concentrate for an eight-hour workday (*see* Opening Brief, ECF No. 11, p. 6). Plaintiff also complains that the ALJ gave significant weight to the opinion of Dr.

Michael Barnard, M.D. "that no objective findings support any accommodations and restrictions" as well as Dr. Michelle Zhong M.D.'s opinion in October 2006 "that the claimant was fully capable of performing her normal job duties at the time, concurring with Dr. Barnard's assessment" (*see* Tr. 297 (*citing* Exhibits 9F/6; 11F/1; 2F/1); *see also* Tr. 241, 276, 282).  However, contrary to plaintiff's characterization, the ALJ did not rely solely on a lack of objective findings during the physical examination to fail to credit fully plaintiff allegations of the level of her physical limitations (*see* Opening Brief, ECF No. 11, p. 6). As discussed above, *see e.g., supra* section 3, the ALJ relied in part of a finding that plaintiff was exaggerating her symptoms to a point above and beyond that explained by somatoform disorder. The ALJ's resolution of the medical record herein does not contain harmful legal error and is supported by substantial evidence in the record as a whole.

As the Court already has concluded, *see supra*, section 3, the ALJ's finding of symptoms exaggeration includes an acknowledgement of plaintiff's diagnosis of somatoform disorder, but also encompasses a recognition that if plaintiff's somatoform disorder truly caused her to experience as much pain as she alleged at the doctor's office, according to the doctor's opinion, it would have been "virtually impossible" for her to walk or bear weight of any kind (*see* Tr. 274).  The fact that plaintiff reported to Dr. Mayer that she was "able to cook and clean  . . . .  can buy groceries and drive  . . . . cleans about 30 minutes a day on the average [and] is able to wash dishes, do the laundry, and vacuum her floors," provides support for the inference that plaintiff was

demonstrating more pain at the doctor's office from her somatoform disorder than she experienced in her everyday life from her somatoform disorder (*see* Tr. 504).

Based on the reasons discussed in this decision herein, and based on the relevant record, the Court concludes that the ALJ's finding that plaintiff's subjective complaints were far in excess of objective findings, even when accommodating for the objective findings regarding her diagnosis and severity of her somatoform disorder, was a finding based on substantial evidence in the record as a whole. The Court also concludes that the ALJ's RFC determination is proper and that the ALJ's ultimate determination that plaintiff was not disabled pursuant to the Social Security Act is without harmful legal error and is supported by substantial evidence in the record as a whole.

CONCLUSION

Based on the stated reasons, and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

//

1     Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set

2  the matter for consideration on April 26, 2013, as noted in the caption.

3     Dated this 3rd day of April, 2013.

4

5

6                                         /s/J. Richard Creatura
                                          J. Richard Creatura
7                                         United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24